FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 0 9 2012

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

STATE OF ARKANSAS *ex rel.*
DUSTIN MCDANIEL, ATTORNEY GENERAL                                    PLAINTIFF

v.                           Case No: 4:12 cv 494 BSM

ASSOCIATED ACCOUNTING SPECIALISTS, INC.;
AND WILLIAM R. PAGE

                                                                      DEFENDANTS

---

**COMPLAINT**

---

COMES NOW, the State of Arkansas ("the State") *ex rel.* Dustin McDaniel, Attorney

General, and for its Complaint against the Defendants, Associated Accounting Specialists, Inc.

("AASI") and William R. Page (referred to collectively as "the Defendants"), states and alleges

as follows:

This case assigned to District Judge Miller
and to Magistrate Judge Deere

**I.    INTRODUCTION**

1.     The Defendants have solicited Arkansas consumers through the use of automated

telephone calls ("robocalls"). The purported purpose of the robocall solicitation was to market

assistance for consumers in obtaining lower credit card interest rates. The vast majority of call

recipients hung up on the recording. However, those consumers that listened to the sales pitch,

believed the misrepresentations, and participated in the programs provided by the Defendants

found that the Defendants never intended to actually help the consumer obtain a lower interest

rate. The Defendants accepted money from consumers and then failed to provide the services

they promised to perform. As outlined herein, the acts and practices undertaken by the

Defendants were in violation of federal and state law.

2.      This is consumer protection action brought pursuant to the Telemarketing and Consumer Protection Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101, et seq., the Telemarketing Sales Rule, 16 C.F.R. § 310, the Arkansas Consumer Telephone Privacy Act, ARK. CODE ANN. § 4-99-401, et seq., the Arkansas Deceptive Trade Practices Act, ARK. CODE ANN. § 4-88-101, et seq., and the Arkansas Advance Fee Loan Brokerage Act, ARK. CODE ANN. § 23-39-401, et seq.  This action is brought to redress and restrain violations of the aforementioned consumer protection statutes.

3.      The State, as *parens patriae*, is authorized by 15 U.S.C. § 6103(a) to file a federal district court action to enjoin violations of the Telemarketing Sales Rule, to enforce compliance with the Telemarketing Sales Rule, to obtain damages, restitution, or other compensation on behalf of the residents of the state of Arkansas, and to obtain such further and other relief as the Court may deem appropriate.

4.      The State seeks an injunction, an order of restitution, the imposition of civil penalties, and other ancillary relief against the Defendants for the violations of the aforementioned laws.

## II.   PARTIES

5.      Plaintiff is the State of Arkansas *ex rel.* Dustin McDaniel, Attorney General of Arkansas.  Attorney General McDaniel is the chief legal officer of the State.  Pursuant to 15 U.S.C. § 6103(a) and ARK. CODE ANN. § 4-88-104, the State may seek civil enforcement of the Telemarketing Sales Rule and the Arkansas Deceptive Trade Practices Act.  Pursuant to ARK. CODE ANN. § 4-99-407(b) and ARK. CODE ANN. § 23-39-404(a), the State may seek civil enforcement of the Arkansas Consumer Telephone Privacy Act and the Arkansas Advance Fee Loan Brokerage Act.

6.     Defendant Associated Accounting Specialists, Inc. is a Florida corporation formed on August 11, 2011, whose principal place of business is in Port St. Lucie, Florida. Its registered agent for service of process is William Page, 146 NW Central Park Plaza, Ste. 201, Port St. Lucie, Florida 34986. Associated Accounting Specialist, Inc. has an active registration with the Florida Secretary of State. It is not registered with the Arkansas Secretary of State.

7.     Defendant William Page is a New Jersey resident and is the owner of AASI. Defendant William Page is also the registered agent and President of AASI. Defendant William Page, at all times relevant to the circumstances alleged in the Complaint, operated, controlled, and directed the business activities of Associated Accounting Specialists, Inc. Through his position of control and authority, Defendant William Page knew or reasonably should have known of the acts and practices of AASI, described in this Complaint.

8.     Defendant William Page is a controlling person of Associated Accounting Specialists, Inc., within the meaning of ARK. CODE ANN. § 4-88-113(d). As such, he is personally liable for not only his personal acts which violated Arkansas law, but also for the individual and collective acts of Associated Accounting Specialists, Inc.

## III.     JURISDICTION

9.     This Court has jurisdiction over portions of this action under 15 U.S.C. § 6103(a), which provides, in part: "Whenever an attorney general of any State has reason to believe that the interests of the residents of that State have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the [Federal Trade] Commission under section 6102 of this title, the State, as *parens patriae*, may bring a civil action on behalf of its residents in an appropriate district court of the United States ...."

10.     As to the remaining claims of the State, this Court has jurisdiction under 28 U.S.C. § 1367(a), which provides, in part: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), which provides that a civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought in a judicial district where any defendant resides, if all defendants reside in the same district or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Under the terms of 28 U.S.C. § 1391(d), a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

## IV.     FACTUAL ALLEGATIONS

12.     The Defendants, either on their own or through other persons, have placed and continue to place outbound telephone calls to consumers within the State of Arkansas.

13.     The Defendants placed these calls for the purpose of marketing products to Arkansas consumers. These unsolicited telemarketing calls were made via an auto-dialing device that played a prerecorded message (referred to as "robocalls"). With the use of robocalls, sales agents neither selected nor dialed individual telephone numbers on behalf of the Defendants.

14.     The Defendants utilized this system to maximize the number of consumers they could contact with their sales pitch. Auto-dialing devices increase the amount of calls a

4

telemarketer can place to consumers while decreasing the cost of placing the calls. The price of placing the calls decreases because there is no need for actual people to place the calls.

15.    Defendants' robocalls offered to lower consumers' credit card interest rates. The robocall then enticed consumers into obtaining additional information about this debt relief service by directing them to enter a prompted number to speak with a live sales agent.

16.    By law telemarketers and sellers are prohibited from calling phone numbers that are registered on the Do Not Call List. They are required to search the Do Not Call List at least once every 31 days. The robocalls placed by the Defendants were made to consumers whose telephone numbers were registered on the national Do Not Call List.

17.    Telemarketers are only allowed to contact consumers on the Do Not Call List for the purpose of selling a good or service if they have an express agreement, in writing, of the consumer's authorization that telemarketing calls could be placed to their telephone numbers by the Defendants, or if they have an established prior or existing business relationship with the Defendants. The Arkansas consumers who received these robocalls did not fall within either of these two categories.

18.    During these robocalls and in subsequent communications, the Defendants made various representations to consumers, including, but not limited to, statements that the Defendants could assist consumers by negotiating lower credit card interest rates.

19.    During the phone conversation with the live sales agent, Defendants would require consumers to provide payment information for fees associated with the offered services. These fees were typically charged to the consumer's existing credit card or drafted from the consumer's bank account. The fees were always charged and received by the Defendants before

any services were rendered.  The fees were usually charged to consumers in the absence of a

written agreement.

20.     The Defendants then sent consumers a packet through the mail describing the

services that the Defendants could provide and requesting additional information.

21.     Throughout the solicitation and payment process, Defendants never had any

intent, nor any reasonable expectation, to fulfill their promises and, in fact, failed to obtain lower

credit card interest rates for consumers.

22.     The representations made in the unsolicited telemarketing calls were false and

deceptive, in that Defendants did not have the intent, nor any reasonable expectation, to obtain

the promised interest rate reductions, nor any more means to do so than the consumers

themselves.  The Defendants' practices have been damaging to consumers and a burden on the

State.

## V.     VIOLATIONS OF LAW

### A.     Telemarketing and Consumer Fraud and Abuse Prevention Act and the FTC Telemarketing Sales Rule

23.     The State incorporates by reference the allegations set forth in paragraphs 1

through 22 above.

24.     15 U.S.C. § 6101, *et seq.*, otherwise known as the Telemarketing and Consumer

Fraud and Abuse Prevention Act, and 16 C.F.R. § 310, otherwise known as the Telemarketing

Sales Rule, sets forth the federal statutory and regulatory program governing deceptive

telemarketing acts or practices and abusive telemarketing acts or practices, including, but not

limited to, violations of the national "Do-Not-Call" registry maintained by the FTC.

25.     The FTC promulgated the Telemarketing Sales Rule pursuant to 15 U.S.C. §

6102.

26.    15 U.S.C. § 6102(a)(3)(A) provides that the FTC shall promulgate rules respecting abusive telemarketing acts or practices that prohibit telemarketers from undertaking a pattern of unsolicited telephone calls that the reasonable consumer would consider coercive or abusive of such consumer's right to privacy.

27.    The Defendants are "sellers" or "telemarketers" engaged in "telemarketing," as those terms are defined in the Telemarketing Sales Rule.  16 C.F.R. § 310.2(aa); 16 C.F.R. § 310.2(cc); 16 C.F.R. § 310.2(dd).

28.    The Defendants did not have an "established business relationship" with the targeted consumers as defined in the Telemarketing Sales Rule. 16 C.F.R. § 310.2(o).

29.    A debt relieve service means "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector." 16 C.F.R. § 310.2(m).

30.    The Defendants offered "debt relief services" as defined by 16 C.F.R. § 310.2(m).

31.    117 Stat. 1006 ratified the authority of the FTC to implement and enforce a national "Do-Not-Call" registry under the provisions of 15 U.S.C. § 6102(a)(3)(A).

32.    Pursuant to 16 C.F.R. § 310.4(b)(3)(iv), a seller or telemarketer will not be liable under 16 C.F.R. § 310.4(b)(1)(iii) if the seller or telemarketer "uses a process to prevent telemarketing to any telephone number on any list established pursuant to § 310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains

records documenting this process." The Defendants did not comply with 16 C.F.R. § 310.4(b)(3)(iv) to insure that no calls were placed to consumers on the "Do-Not-Call" list.

33.     Pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B), it is an abusive telemarketing act or practice and a violation of the Telemarketing Sales Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the initiation of any outbound telephone call to a person when that person's telephone number is on the "Do-Not-Call" registry, maintained by the FTC, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services, unless the seller: (i) has obtained the express agreement, in writing, of such person to place calls to that person, with such written agreement clearly evidencing such person's authorization that calls made by or on behalf of a specific party may be placed to that person and including the telephone number to which the calls may be placed and the signature of that person, or (ii) has an established business relationship with such person and that person has not stated that he or she does not wish to receive outbound telephone calls under 16 C.F.R. § 310.4(b)(1)(iii)(A). The Defendants caused calls to be made to consumers on the "Do-Not-Call" registry for the purpose of soliciting business. Defendants had neither a business relationship with the consumers nor an express agreement with consumers stating that Defendants could call them.

34.     The Telemarketing Sales Rule requires telemarketers and sellers to truthfully disclose to consumers, before the consumer consents to the sale, in a clear and conspicuous manner, material information including the cost of the purchase, any material restrictions, limitations, or conditions to the purchase, and any policy concerning refunds, cancellations, exchanges, and repurchases. 16 C.F.R. § 310.3(a)(1)(i), (ii), (iii). The Defendants failed to disclose this material information to consumers while selling consumers debt relief services.

35.     In the sale of *any* debt relief service, the Telemarketing Sales Rule requires telemarketers and sellers to truthfully disclose to consumers, before the consumer consents to the sale, in a clear and conspicuous manner, the amount of time it will take to reach the represented results. 16 C.F.R. § 310.3(a)(1)(viii)(A).   The Defendants failed to disclose this material information to consumers while selling consumers debt relief services.

36.     The Telemarketing Sales Rule prohibits telemarketers and sellers from preventing the transmission of their number to any caller identification service in use by the recipient of the telemarketing call. 16 C.F.R. § 310.4(a)(8).   The Defendants, when using telemarketing to sell their deceptive services, prevented their number from displaying on consumers' caller identification service.

37.     The Telemarketing Sales Rule prohibits telemarketers and sellers from causing outgoing calls that deliver pre-recorded messages to be made to consumers. 16 C.F.R. § 310.4(b)(1)(v).   The Defendants caused outgoing calls with pre-recorded messages to be made to consumers.   The Defendants had no statutory exemption permitting such conduct.

38.     The Telemarketing Sales Rule prohibits telemarketers and sellers from misrepresenting, directly or by implication, "[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are subject to a sales offer." 16 C.F.R. § 310.3(a)(2)(iii).   The Defendants continually assured consumers that they could lower the consumers' credit card interest rate.   However, the Defendants failed to negotiate lower interest rates for consumers.   Even if they had, consumers have as much means to negotiate a lower interest rate as do the Defendants.   The Defendants implicitly represented to consumers that only the Defendants could negotiate a lower interest rate for the consumer.

39.     Under 15 U.S.C. § 6103(a), "whenever an Attorney General of any State has reason to believe that the interests of the residents of that State have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the [FTC] under section 6102 of this title, the State, as *parens patriae*, may bring a civil action on behalf of its residents in an appropriate district court of the United States to enjoin such telemarketing, to enforce compliance with such rule of the [FTC], to obtain damages, restitution, or other compensation on behalf of residents of such State, or to obtain such further and other relief as the court may deem appropriate."

40.     Pursuant to 15 U.S.C. § 6103(b) and 16 C.F.R. § 310.7(a), prior to bringing suit to enforce the requirements of the Telemarketing and Consumer Fraud and Abuse Prevention Act and its corresponding regulation, an Attorney General must provide written notice to the FTC. (A copy of the Notice of Initiation of Legal Action against Defendant that was provided to the FTC in this matter is attached hereto as Exhibit 1.)

**B.     Arkansas Consumer Telephone Privacy Act**

41.     The State incorporates by reference the allegations set forth in paragraphs 1 through 40 above.

42.     ARK. CODE ANN. § 4-99-401, *et seq.*, otherwise known as the Arkansas Consumer Telephone Privacy Act, sets forth the State's statutory program governing telemarketing to those Arkansas residents affirmatively objecting to unsolicited telephone solicitations.

43.     Pursuant to ARK. CODE ANN. § 4-99-404(1), the Attorney General shall establish a statewide database composed of a list of telephone numbers of consumers who object to receiving telephone solicitations.

44.     ARK. CODE ANN. § 4-99-404(2)(C)(i) provides that "[t]he database may include Arkansas consumers who have registered for the national "Do-Not-Call" registry established and maintained by the FTC pursuant to 16 C.F.R. § 310.4 . . . ."

45.     Pursuant to ARK. CODE ANN. § 4-99-405(1), it is a violation of the Arkansas Consumer Telephone Privacy Act to "[m]ake or transmit a telephone solicitation to the telephone number of any consumer included in the then-current database maintained by the Attorney General . . . ." The Arkansas database has been merged with and is now maintained concurrently with the FTC database. The Defendants transmitted telephones solicitations the consumers included in the "Do-Not-Call" database.

46.     Likewise, under ARK. CODE ANN. § 4-99-405(3), it is a violation of the Arkansas Consumer Telephone Privacy Act to make or transmit a telephone solicitation if that telephone solicitation violated the national "Do-Not-Call" rule set out in 16 C.F.R. § 310.4.

47.     A "consumer" is any person who has been assigned in the State of Arkansas any residential telephone line and corresponding telephone number. ARK. CODE ANN. § 4-99-403(3).

48.     The term "telephone solicitation" means the initiation of a telephone call or message for the purpose of encouraging the purchase, or rental of, or investment in property, goods, or services, which telephone call or message is transmitted to any consumer, but such term does not include a call or message to any person made with that person's prior written express invitation or permission, or a call or message to any consumer with whom the telephone solicitor has a prior or existing business relationship. ARK. CODE ANN. § 4-99-403(6).

49.     "Person" means "any individual, group, unincorporated association, limited or general partnership, limited liability corporation, corporation, professional fund raiser, charitable organization, or other business entity." ARK. CODE ANN. § 4-99-403(4).

50.    The term "prior or existing business relationship" means a relationship in which some financial transaction has transpired between the consumer and the telephone solicitor or its affiliates within the 36 months preceding the contemplated telephone transaction, but the term shall not include the solicitation wherein the consumer has merely been subject to a telephone solicitation by the telephone solicitor within the 36 months preceding the contemplated telephone solicitation. ARK. CODE ANN. § 4-99-403(5).

51.    Each Defendant is a "person" who has made "telephone solicitations" regarding debt relief services to "consumers" that are enrolled in the database of those Arkansans objecting to such telemarketing calls.

52.    The Defendants did not have a prior or existing business relationship with these Arkansas consumers.

53.    ARK. CODE ANN. § 4-99-407(a) provides that any violation by a person of the prohibitions set out in ARK. CODE ANN. § 4-99-405 shall constitute an unfair or deceptive act or practice as defined by ARK. CODE ANN. § 4-88-101 *et seq.*, of the Arkansas Deceptive Trade Practices Act.

54.    Pursuant to ARK. CODE ANN. § 4-99-407(b), all authority granted to the Attorney General under the Arkansas Deceptive Trade Practices Act shall be granted to and available to the Attorney General for the enforcement of the Arkansas Consumer Telephone Privacy Act.

## C.    Arkansas Deceptive Trade Practices Act

55.    The State incorporates by reference the allegations set forth in paragraphs 1 through 54 above.

56.    ARK. CODE ANN. § 4-88-101 *et seq.*, otherwise known as the Arkansas Deceptive Trade Practices Act ("ADTPA"), sets forth the State's statutory program prohibiting deceptive and unconscionable trade practices.

57.     The business practices of Defendants constitute the sale of "goods" or "services" within the meaning of ARK. CODE ANN. § 4-88-102(4) and (7).  The same business practices constitute business, commerce, or trade within the meaning of ARK. CODE ANN. § 4-88-107.

58.     ARK. CODE ANN. § 4-88-107(a)(1) provides that it shall be unlawful to "knowingly make a false representation as to the characteristics, uses, benefits ... of goods or services ...."  Defendants have engaged in prohibited conduct by misrepresenting to consumers that the Defendants could lower the consumers' credit card interest rates.  The Defendants had no more means to do so than the consumers themselves.  Further, in most instances the Defendants never had the capacity, nor any reasonable expectation, that they would be able to lower the interest rates for consumers.

59.     ARK. CODE ANN. § 4-88-107(a)(10) provides that it shall be unlawful to engage in unconscionable, false, or deceptive acts or practices in business, commerce, or trade.  For many of the sales solicited by the Defendants, including many where the Defendants had acquired and retained payment, the Defendants had no capacity, nor any reasonable expectation, of actually assisting consumers with their credit card interest rate.  This is a deceptive and unconscionable trade practice prohibited by ARK. CODE ANN. § 4-88-107(a)(10).

60.     ARK. CODE ANN. § 4-88-107(a)(11) prohibits persons from "[d]isplaying or causing to be displayed a fictitious or misleading name or telephone number on an Arkansas resident's telephone caller identification service."  The Defendants have caused misleading telephone numbers to show up on Arkansas residents' telephone caller identification services.

61.     ARK. CODE ANN. § 4-88-108 prohibits the use of concealment, suppression, or omission of any material fact in the connection with the sale or advertisement of any goods and services.  The Defendants have engaged in prohibited conduct by intentionally failing to inform

Arkansas consumers that the Defendants had no real expertise in regards to lowering credit card interest rates and also intentionally failing to inform Arkansas consumers that the Defendants had no capacity, nor any reasonable expectation, of actually negotiating a lower interest rate for consumers.

62.    The Defendants have engaged in a course of trade or commerce and have engaged in acts or practices that constitute unfair or deceptive acts or practices, each of which is a violation of the Arkansas Deceptive Trade Practices Act.

### D.    Arkansas Advance Fee Loan Brokerage Act

63.    The State incorporates by reference the allegations set forth in paragraphs 1 through 62 above.

64.    ARK. CODE ANN. § 23-39-401, *et seq.*, sets forth the State's statutory program governing the practice of using advance fees by loan brokers.

65.    A "loan broker" is any person who "[f]or or in expectation of consideration assists or advises a borrower in obtaining or attempting to obtain a loan of money, a credit card, a line of credit, or related guarantee, enhancement, or collateral of any kind or nature."

66.    The Defendants are "loan brokers" as defined by ARK. CODE ANN. § 23-39-401(5)(A).

67.    The Defendants charged consumers "advanced fees" as defined by ARK. CODE ANN. § 23-39-401(1).

68.    ARK. CODE ANN. § 23-39-404(1) prohibits loan brokers from assessing or collecting "an advance fee from a borrower to provide services as a loan broker." The Defendants, as loan brokers, have collected advance fees for services from consumers.

69.    ARK. CODE ANN. § 23-39-404(2) prohibits loan brokers from making or using "unfair, false, misleading, or deceptive representations or to omit any material fact in the offer or

sale of the services of a loan broker, or to engage, directly or indirectly, in any act that operates or would operate as an unfair, false, misleading, or deceptive representation in his business dealings." The Defendants continually assured consumers that they could lower consumers' credit card interest rate. However, the Defendants failed to negotiate lower interest rates for consumers. Even if they had negotiated lower interest rates, consumers have as much means to negotiate a lower interest rate as do the Defendants.

70.    ARK. CODE ANN. § 23-39-405(a)(1) provides that "[a] violation of any of the provisions of this subchapter shall constitute an unfair or deceptive act or practice as defined by the Deceptive Trade Practices Act, § 4-88-101 et seq."

71.    Pursuant to ARK. CODE ANN. § 23-39-405(a), all authority granted to the Attorney General under the ADTPA shall be granted to and available to the Attorney General for the enforcement of the Arkansas Advance Fee Loan Brokerage Act.

**PRAYER FOR RELIEF**

72.    Under the provisions of the Telemarketing Act, 15 U.S.C. § 6103(a), this Court is empowered to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the Telemarketing Sales Rule.

73.    Pursuant to the Telemarketing Act, 15 U.S.C. § 6103(a), this Court is empowered to enter such orders or judgments as may be necessary to restore to any consumer who has suffered any ascertainable loss by reason of the use or employment of any prohibited practices any monies which may have been acquired by the Defendants in violation of the Telemarketing Sales Rule.

74.    Under the provisions of ARK. CODE ANN. §§ 4-88-104 and 4-88-113(a)(1), the Attorney General may seek an injunction prohibiting any person from engaging in any deceptive

or unlawful practice.

75.     Pursuant to ARK. CODE ANN. § 4-88-113(a)(2)(A), the Court may enter such orders or judgments as are necessary to "[r]estore to any purchaser who has suffered any ascertainable loss by reason of the use or employment of the prohibited practices any moneys or real or personal property which may have been acquired by means of any practices declared to be unlawful . . . together with other damages sustained."

76.     Pursuant to ARK. CODE ANN. § 4-88-113(a)(3), any person who violates the provisions of the Arkansas Deceptive Trade Practices Act may be assessed a civil penalty of up to $10,000 per violation.

77.     In addition, under the provisions of ARK. CODE ANN. § 4-88-113(e), any person who violates the provisions of the Arkansas Deceptive Trade Practices Act shall be liable to the Office of the Attorney General for all costs and fees, including but not limited to, expert witness fees and attorney's fees, incurred by the Office of the Attorney General in the prosecution of such actions.

78.     Each of the Defendants is a "person" who has engaged in an unconscionable, false, or deceptive act or practice in business, commerce, as set out more specifically above.

79.     Under the provisions of ARK. CODE ANN. § 23-39-405(b)(2)(A), the Attorney General may seek restitution for victimized consumers in the "amount of three (3) times the amount paid by the borrower for the loan services or one thousand dollars ($1,000), whichever is greater."

WHEREFORE, the above premises considered, the State of Arkansas *ex rel.* Dustin McDaniel, Attorney General, respectfully requests that this Honorable Court:

(A)     Issue such orders, pursuant to 15 U.S.C. § 6103(a), ARK. CODE ANN. §§ 4-88-104, and 4-88-113(a)(1), as may be necessary to prevent the use or employment by the Defendants of the practices described herein which are violations of the Arkansas Deceptive Trade Practices Act and the Telemarketing Sales Rule;

(B)     Issue an order, pursuant to 15 U.S.C. § 6103(a) and ARK. CODE ANN. § 4-88-113(a)(2)(A), requiring the Defendants to pay consumer restitution to those Arkansas consumers affected by the activities outlined herein; in addition, or in the alternative, enter an order requiring the Defendants to disgorge all sums obtained from Arkansas consumers by methods prohibited by Arkansas law;

(C)     Issue an order requiring the Defendants to comply with requests from those consumers who wish to cancel their service and to discontinue any further efforts to collect money from those consumers;

(D)     Impose civil penalties pursuant to ARK. CODE ANN. § 4-88-113(a)(3) to be paid to the State by the Defendants in the amount of $10,000.00 per each violation of the Arkansas Deceptive Trade Practices Act proved at a trial of this matter;

(E)     Issue an order, pursuant to ARK. CODE ANN. § 23-39-404(b)(2)(A), requiring the Defendants to pay consumers "[a]n amount of three (3) times the amount paid by the [consumer] for the loan services or one thousand dollars ($1,000), whichever is greater."

(F)     Issue an order, pursuant to ARK. CODE ANN. § 4-88-113(e), requiring the Defendants to pay the State's costs in this investigation and litigation, including, but not limited to, attorney's fees and costs; and

(G) For all other just and proper relief to which the Plaintiff may be entitled.

Respectfully Submitted,

DUSTIN MCDANIEL
Attorney General

By:

Bart W. Calhoun, Ark. Bar No. 2011221
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 500
Little Rock, Arkansas  72201
bart.calhoun@arkansasag.gov
Telephone: (501) 682-3561

Sarah R. Tacker, Ark. Bar No. 2002189
Senior Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 500
Little Rock, Arkansas  72201
sarah.tacker@arkansasag.gov
(501) 683-1321